# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**DUANTE T. WRIGHT,**
    **Petitioner,**

**v.**                                              **Case  No.  3:05cv468/MCR/MD**

**WALTER A. MCNEIL,[1]**
    **Respondent.**

_____

## ORDER and
## <u>REPORT AND RECOMMENDATION</u>

Before the court is a second amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 32).  Respondent has filed a response (doc. 40) to which petitioner has replied (doc. 47).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

---

[1] Walter A. McNeil succeeded James R. McDonough as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).

## BACKGROUND AND PROCEDURAL HISTORY[2]

On the evening of March 24, 1999 the petitioner and a confederate, Duriel Jacobs, decided to commit a robbery.  They were seen talking to Jacob Waggoner at a convenience store.  The three men left in Mr. Waggoner's vehicle, ostensibly for Mr. Waggoner to find some drugs, with petitioner in the back seat and Duriel Jacobs in the front passenger seat.  Mr. Waggoner parked his car at an apartment complex.  Petitioner shot him in the back, got out of the car, and opened the driver's door.  Mr. Waggoner, apparently paralyzed by a bullet in his spine, fell part way out of the car, and Duriel Jacobs shot him in the head, killing him.[3]

Duriel Jacobs was identified from a store video, but it took some time to determine who was with him.  Based on their investigation, detectives went to petitioner's home and asked him to help identify the person they were looking for.  Petitioner voluntarily accompanied the detectives to the station after being told he was not under arrest.  At the station petitioner identified himself, admitted that he and Duriel Jacobs had discussed robbing Mr. Waggoner, but said that he was taken home before anything happened.  Confronted with inconsistencies, petitioner admitted he shot Mr. Waggoner accidentally.

Petitioner was indicted for first degree murder in the Circuit Court of Okaloosa County, Florida, and a jury found him guilty of felony first degree murder.  He was sentenced to life in prison.  The direct appeal of his conviction and sentence was unsuccessful, and he filed a motion for post-conviction relief pursuant to

---

[2]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a part in the court's analysis.

[3]Some witnesses indicated that it was petitioner who shot Mr. Waggoner the second time.  Since the murder occurred during the commission of a robbery in which both petitioner and Duriel Jacobs participated, both were accountable for the murder.

Fla.R.Crim.P. 3.850, which was denied without an evidentiary hearing. The appellate court affirmed without opinion. *Wright v. State*, 913 So.2d 606 (Fla. 1st DCA 2005) (Table). Petitioner also filed a petition for writ of habeas corpus in the appellate court claiming ineffective assistance of counsel. The petition was denied "on the merits." *Wright v. State*, 888 So.2d 147 (Fla. 1st DCA 2004) (Table). The instant federal habeas petition followed. Respondent concedes that this petition is timely (doc. 40, p. 4).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review

in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000).[4]   The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L.Ed.2d 125 (2000).   In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."   *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003).   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."   *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998),

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).   The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision

"contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones*, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## OTHER CONTROLLING FEDERAL LEGAL PRINCIPLES

### Ineffective assistance of counsel.

Some of petitioner's claims for relief in this court are grounded on his contention that he was denied his constitutional right to the effective assistance of counsel. In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.   As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).   Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness. *Chandler* at 1314 (footnote omitted).   Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.   Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."   466 U.S. at 693, 104 S.Ct. at 2067.   Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068.   Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).   In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

**Exhaustion and Procedural Default.**

Respondent contends that petitioner did not present at least one of his current claims to the state court for review and is barred from doing so now, and that this court therefore should not consider the claim(s).  It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a

---

[5]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)   the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)   there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S.

362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

## PETITIONER'S GROUNDS FOR RELIEF

1.   **Ineffective assistance of counsel - counsel failed to move to suppress statements made to law enforcement.**

For his first ground for relief petitioner contends that although his attorney filed a motion to suppress incriminating statements, he did not include a critical basis for the motion, and that petitioner was prejudiced by the omission. Petitioner was given his *Miranda*[6] warnings before his first interview at the sheriff's office, but he contends that the warnings were incomplete. He faults counsel for failing to move to suppress on that basis.

Default.

This ground was not presented to the state courts, either on direct appeal (ex. K), in the Rule 3.850 motion (exs. N, O), or in the state habeas petition (ex. U). It is therefore unexhausted. Any further attempt at exhaustion in Florida courts would be futile because his claim would be untimely and procedurally barred under Florida law. *See* Fla. R. Crim. P. 3.850(b) and (f); *Spaziano v. State*, 545 So.2d 843, 844 (Fla.1989) (holding that second 3.850 motion must be summarily denied where first motion raised claim of ineffective assistance of counsel, second motion sought to raise additional grounds for that ineffectiveness, and second motion did not allege defendant was precluded from asserting the additional grounds in the first motion); *Christopher v. State*, 489 So.2d 22 (Fla. 1986) (holding that "where an initial motion for post-conviction relief raises the claim of ineffective assistance of counsel, the trial court may summarily deny a successive motion which raises additional grounds for ineffective assistance of counsel); *Foley v. State*, 979 So.2d 1181, 1182 (Fla. 3d DCA 2008) (holding that post-conviction movant's claim of ineffective assistance of counsel was both untimely and procedurally barred, where claim was filed more than two years after judgment and sentence became final and could have been raised in

---

[6]*Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966).

one of movant's prior motions for post-conviction relief).

Petitioner concedes that the issue was not raised in the state courts (doc. 32, p. 4) but contends that there was a miscarriage of justice, excusing the default. However, petitioner has made none of the requisite showings to excuse his default. He has not alleged cause for his default.  Moreover, petitioner has presented no new evidence of his factual innocence.   Therefore, this claim was defaulted, and it will not be considered in this court.

Merits.

If the claim were not defaulted it would still fail because it lacks merit.  At the hearing on petitioner's motion to suppress (based on his claimed request to end the questioning, discussed in Ground 2, below), Det. Tony Wasden testified that *when petitioner first arrived at the station and before any questions were asked*, he read petitioner's *Miranda* rights to him from a card he carried in his wallet, as follows:

> You have the right to remain silent.  Anything you say can and will be used against you in a court of law.  You have the right to talk to a lawyer and have him[7] present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish.  You can decide not to answer at any time by exercising these rights and not answer any questions or make any statements.

(Ex. C, p. 583).  Petitioner argues that this warning did not inform him that he had the right to have counsel *present before any questioning*.   Petitioner's claim is misplaced for several reasons.  First, the foregoing warning clearly states that a lawyer "will be appointed to represent you before any questioning if you wish."  It is illogical for petitioner now to say that he was told that a lawyer would be appointed to represent him before questioning and at the same time argue that he was not on notice that his lawyer would be *present* before questioning.  This splits

---

[7]Petitioner incorrectly omits this word in his version of the testimony (doc. 47, p. 2).  The omission is not germane to the instant claim.

too fine a hair.

Second, the cases that petitioner cites do not support his position.  In *United States v. Frankinson*, 83 F.3d 79 (4th Cir. 1996) the court held exactly contrary to what petitioner contends.  There the police had given a very general warning that anything the defendant said could be used against him, that he had the right to an attorney, and that if he could not afford an attorney, the government would get one for him.  83 F.3d at 81.  Nothing was said about counsel being present, either before or during questioning.   The court held that the warning was sufficient, reasoning that the Supreme Court had never held that *Miranda* extended to any precise formulation, citing *California v. Prysock*, 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981), and that the warning as given "communicated to [the defendant] that his right to an attorney began immediately and continued forward in time without qualification."  83 F.3d at 82.  The *Frankinson* court held that the defendant's claim that he was not warned that his attorney could be with him before and during questioning was without merit.

Petitioner also relies on *United States v. Noti*, 731 F.2d 610 (9th Cir. 1984).  The *Noti* court held that *Miranda* warnings must be very specific in telling a suspect that the has the right to have an attorney present *during questioning*.  That does not help this petitioner because it is undisputed that he was told exactly that.  Petitioner has not pointed to, nor has the court found, any case that holds as he argues.  Moreover, *Noti* has never been followed in any other Circuit.[8]

Third, before petitioner made any statements, he signed a *Miranda* waiver, which specifically stated "You have the right to talk to a lawyer for advice before we ask you questions and to have him with you during questioning."  (Ex. D).  Again, this was sufficient to place petitioner on notice that his attorney could be with him

---

[8]Contrary to petitioner's contention, *Noti* did not *hold* (although it mentioned) that the defendant must be told he has the right to have his attorney present *before questioning*, because that part of the rights statement was included in what the police told Mr. Noti.  Since that question was not before the court, the statement upon which petitioner relies is *dicta*.

at all times.

Finally, petitioner cannot succeed on this ground for a more fundamental reason - he was not in custody when he admitted shooting Mr. Waggoner.  The *Miranda* rule applies to custodial interrogations.  A "custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.ED. 2d 714 (1977) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966)).  This includes questioning that takes place in a suspect's home "after he has been arrested and is no longer free to go where he pleases." *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714 (citing *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969)).

Nowhere in his pleadings does petitioner assert that he was in custody at the time he was questioned, and the record shows that he was not.  Det. Wasden testified at the motion to suppress hearing (ex. C, pp. 568-590) and at trial (ex. F, pp. 409-422), without contradiction, and the transcript of the interview confirms (ex. P, pp. 115-170), that he and another investigator found petitioner at home and asked if they could come in and ask some questions.  He explained to petitioner that Duriel Jacobs had been identified on the store security video but that there was an unidentified person present.  He told petitioner that he did not have to answer any questions and that he was not under arrest.  He was free to tell the detectives to leave.  Det. Wasden asked petitioner if he would accompany them to the sheriff's office to look at a video, because someone had indicated that petitioner might be the unidentified person.  Petitioner then volunteered that it might be him, because he had been with Duriel Jacobs that night.

Petitioner agreed to go to the sheriff's office.  Before they left petitioner's residence Det. Wasden again told him that he was not under arrest, and that after looking at the video they would bring him home unless he were implicated.

Petitioner laughed, and went to his room to get dressed.  When petitioner got in the car he was again told that he did not have to answer any questions and that he was not under arrest.  When they arrived at the station Det. Wasden asked petitioner if he could take a taped statement, and petitioner consented.  Det. Wasden then advised him of his *Miranda* rights.  Another detective went to get petitioner a soda. Petitioner was then given a rights waiver to read and sign, which he did (ex. D). There was noise in the hall, and Det. Wasden asked petitioner if he minded if they shut the door, to which petitioner consented.  He was again told that he was not under arrest, did not have to answer any questions, and could leave anytime he wanted to.  During the interview petitioner admitted that he shot Mr. Waggoner, although accidentally.

The record shows that petitioner was not under arrest or otherwise in custody at any time before he admitted shooting Mr. Waggoner.  *Miranda* warnings were therefore unnecessary, any statements petitioner made were voluntary, and were admissible, so a motion to suppress based on allegedly incomplete *Miranda* warnings would have failed.  Counsel cannot be ineffective for failing to file a losing motion, *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), and even if counsel's performance was deficient, which this court does not find, petitioner cannot show prejudice for the same reason.  *Id*.

In summary, petitioner's first ground for relief is procedurally defaulted and lacks merit because the *Miranda* warnings were appropriate, and in any event were unnecessary.  For all of these reasons, petitioner is not entitled to federal habeas relief, and the writ should not issue.

    2.    <u>The trial court erred in finding that petitioner did not ask that the interrogation end when he expressed discomfort.</u>

During the interview at the sheriff's office petitioner was shown the security tape from the convenience store. He admitted he was on the tape with Duriel Jacobs (ex. P, p. 125).  He said the two of them went into the bathroom (as the video

showed), and talked about robbing "the fellow" (Waggoner) (*id.* at 127).  Det. Wasden again told petitioner that he was not under arrest and that he did not have to talk (*id.* at 128).  Then the following transpired:

> A [Petitioner]        Yes sir.  I'm getting real, real uncomfortable.
>
> Q [Wasden]          Are you getting uncomfortable?
>
> A        Yes, sir.
>
> Q        Well, do you want to get something else to drink or something?  We're not trying to make you uncomfortable.
>
> A        It's not the drink, my stomach.
>
> Q        Your stomach?
>
> A        Yeah.
>
> Q        Okay.  I can understand.  You're trying to think back on something like this.  It's kind of hard, ain't it?  Is that right?
>
> A        Yes, sir.

(*Id.*).  Det. Wasden then asked petitioner if the interview could be taped, to which petitioner agreed.  Det. Wasden again reminded petitioner of his rights, that he was not under arrest, that he was welcome to leave at any time, and that he did not have to talk (*id.* at 129).  Then:

> A [Petitioner]        Yeah.  I'm - -
>
> Q [Wasden]          Huh?
>
> A        I'm starting to get a little too uncomfortable.  I kind of want to go home.
>
> Q        Okay.  I would like to go through this tape with you if you could help us out with this tape, because if somebody else that comes in there I just want to see if you recognize 'em.  I'm trying to identify everybody that I know that we can.  Would you mind helping us out with that?

A      Yeah.

Q      Okay.  I appreciate that.  I'm going to continue on.  You're in the bathroom and I understand that you're talking about how he wants to rob this guy.

A      Uh-huh.

(*Id*. at 129-130).  The interview continued, and petitioner ultimately admitted shooting Mr. Waggoner.

State Court Decision

The foregoing formed the grounds for the motion to suppress discussed earlier.  Defense counsel argued that when petitioner said he was getting "a little too uncomfortable" and "kind of" wanted to go home, the officers should have stopped the interview.  After a hearing the trial court denied the motion to suppress.  It found that petitioner was advised of his rights, and, specifically the above-quoted statement

> is certainly not an unequivocal[9] request to cease the interview.  It is not a request for counsel at that time, and it is not a request to invoke his right to remain silent.  The Court finds that, at best, it is a description of his personal feelings or discomfort, and probably has more to do with stomach discomfort than it does his desire to cease or desist the interview.

(Ex. C, pp. 634-635).  Petitioner challenged the trial court's ruling on direct appeal, but was not successful.

---

[9]In his reply petitioner quotes this word as "equivocal" rather than as "unequivocal" (doc. 47, p. 4), which he undoubtedly took from the respondent's misquote of the same term (doc. 40, p. 21), and on this basis argues that the trial court found exactly the opposite of what it actually found.  The record (ex. C, p. 633) clearly says "unequivocal."  If the trial court had used the word as petitioner quotes it, the court's ruling - that the motion to suppress was denied because petitioner did not ask that the questioning cease - was contrary to its factual finding, and was internally inconsistent.  It is obvious from a reading of the entire statement by the trial court that petitioner's use of "equivocal" is incorrect.

**Federal Review of State Court Decision**

Clearly established federal law on this issue was announced in *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). There, during an interview a suspect, having previously waived his *Miranda* rights, said "Maybe I should talk to a lawyer." 512 S.Ct. at 455, 114 S.Ct. at 2353. The Court held that this was insufficient to require cessation of the interview. Rather, "the suspect must unambiguously request counsel." *Id.* at 459, 2355. Officers must determine whether there has actually been a request for counsel, but the inquiry is an objective one. *Id.* If the request is ambiguous or equivocal, and is reasonably understood "only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning. . . . Rather, the suspect must unambiguously request counsel. *Id.* (emphasis in original).

*Davis* involved a claimed request for counsel, but petitioner's claim here - that questioning should have ceased because he was "starting to get a little too uncomfortable" and "kind of want[ed] to go home" - is no different in substance. Indeed, in *Medina v. Singletary*, 59 F.3d 1095, 1100-01 (11th Cir. 1995) and *Delap v. Dugger*, 890 F.2d 285, 294 n. 9 (11th Cir. 1989) the Eleventh Circuit found, on facts similar to these, that the law relating to requests for counsel and restrictions on further questioning parallels the right to remain silent. *See also James v. Marshall*, 322 F.3d 109 (1st Cir. 2003) (holding that *Davis* applies to both components of *Miranda* - the right to counsel and the right to remain silent); *United States v. Mills*, 122 F.3d 346, 350-51 (7th Cir. 1997) (same); *United States v. Hurst*, 228 F.3d 751 (6th Cir. 2000) (applying *Davis* standard to determine whether defendant's refusal to answer one particular question was a clear and unequivocal assertion of his right to remain silent in response to subsequent questions). Therefore, the test to be applied here is whether petitioner unambiguously asked for questioning to cease.

The state court found that he had not done so. Petitioner relies on the Supreme Court's statement in *Davis* that "it will often be good police practice for the

interviewing officers to clarify whether or not [the suspect] actually wants an attorney[,]" *Davis,* 512 U.S. at 461, 114 S.Ct. at 2356, but the Court did not mandate "good police practice." To the contrary, the *Davis* Court affirmed the bright line test announced in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)*,* that "after a knowing and voluntary waiver of *Miranda* rights*,* law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis*, 512 U.S. at 461, 114 S.Ct. at 2356. Petitioner's statement to the officers that he was getting "a little too uncomfortable" and "kind of" wanted to go home was by no measure an unequivocal request to end the interview. Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

   3.   <u>Ineffective assistance of appellate counsel - failure to appeal incorrect jury instruction.</u>

_____Petitioner next contends that his appellate counsel should have appealed an incorrect jury instruction concerning "attempt." He says that the instruction was incomplete and confusing.[10]

<u>State Court Decision</u>

   Petitioner presented this claim in his petition for habeas corpus filed with the state appellate court (ex. U). The state did not file a brief. The appellate court's decision, in its entirety, read:   "The petition alleging ineffective assistance of appellate counsel is denied on the merits."  (Ex. V).

_____

[10]Petitioner has not provided this court with any facts to support this claim other than to refer to his state habeas petition. The respondent notes that this is generally insufficient to afford relief, but concedes that the habeas petition is part of the record (ex. U), and the factual basis of the claim is readily ascertainable, and therefore addresses the merits. For the sake of completeness, this court will review the merits notwithstanding petitioner's failure to "state the facts supporting each ground." Rules Governing Section 2254 Cases 2(c)(2).

**Federal Review of State Court Decision**

Respondent argues that the appellate court was compelled to deny on the merits, because there was nothing for appellate counsel to argue concerning the allegedly incorrect jury instruction.  The reason there was nothing to argue on appeal was that trial counsel did not object to the instruction.  Under Florida law, if there is no objection, an erroneous jury instruction can be appealed only if there is fundamental error.  *State v. Delva*, 575 So.2d 643, 644 (Fla. 1991).  *See Diaz v. Secretary for Dep't of Corrections*, 402 F.3d 1136, 1142 (11th Cir. 2005) (holding that "[u]nder Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991) (holding that "[s]ince the matters complained of in this case were not preserved for review on appeal, appellate counsel was procedurally barred from raising them on direct appeal and therefore was not deficient in failing to attempt to do so.").  The sole exception to the general rule is where the unobjected-to comments rise to the level of fundamental error, which has been defined as error that "'reached down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Brooks v. State,* 762 So.2d 879, 898-99 (Fla. 2000).

This court must therefore determine whether the trial court's allegedly erroneous jury instruction created fundamental error. In Florida "[f]undamental error has been defined as 'error which goes to the foundation of the case or goes to the merits of the cause of action,'" and although it is to be applied "'very guardedly,'" it nevertheless is to be applied in those "rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application." *Ray v. State,* 403 So.2d 956, 960 (1981) (citations omitted).

Petitioner says that the trial court's instruction on attempt was incomplete and confusing, and (had a substantial and injurious effect or influence in determining the

jury's verdict." (Doc. 47, p. 8). The instruction, as given, was:

> Before you can find the defendant attempted to commit a crime the state must prove the following two elements beyond a reasonable doubt: First, Duante Wright did some act toward committing the crime that went beyond just thinking or talking about it; and secondly, the defendant would have committed the crime except that someone prevented the defendant from committing the crime or the defendant failed.  It is not an attempt to commit a crime if the defendant abandoned the attempt to commit the offense or otherwise prevented its commission under circumstances indicating a complete and voluntary renunciation of the defendant's criminal purpose.

(Ex. F, p. 641).  Petitioner compares this with the Florida Standard Jury Instruction - Criminal, which reads as follows:

> Before you can find the defendant attempted to commit (crime charged), the state must prove the following two elements beyond a reasonable doubt: 1. (Defendant) did some act toward committing the crime of (crime attempted) that went beyond just thinking or talking about it.  2. He would have committed the crime except that [someone prevented him from committing the crime of (crime charged)] [he failed].  It is not an attempt to commit (crime charged) if the defendant abandoned his attempt to commit the offense or otherwise prevented its commission, under circumstances indicating a complete and voluntary renunciation of the defendant's criminal purpose.

Petitioner argues that because the (crime charged) parentheses were not filled in, the jury was not told what the attempted crime might be, so the jury instruction was incomplete and confusing, and therefore giving the instruction was fundamental error.

Petitioner has not cited any authority directly on point holding that not filling in the parentheses under these circumstances constitutes fundamental error, nor has the court found any.  However, the trial transcript shows that if there was error, it was cured.  The trial court's instructions followed the standard pattern.  The court first instructed that petitioner was charged with first degree murder, which included the lesser crimes of second degree murder, third degree murder, and manslaughter.

The court instructed on excusable and justifiable homicide, and then defined the elements of two types of first degree murder - premeditated murder and felony murder. The felony murder instruction included the elements of robbery. The court then instructed on attempt, as quoted above.  Next the court instructed on the elements of second degree murder, third degree murder, including the elements of theft of a firearm, then manslaughter, and aggravated battery. (Ex. F, pp. 636-647). Lastly, the court read the jury the verdict form, which consisted of numbered paragraphs in which the jury could find the petitioner (A) guilty of only one of (1) both premeditated and felony murder, (2) premeditated murder only, (3) felony murder only, (4) attempted first degree murder, (5) second degree murder, (6) attempted second degree murder, (7) third degree murder, (8) manslaughter, (9) attempted manslaughter, (10) aggravated battery, or (B) (11) not guilty.

Thus, while the "attempt" instruction was given generally, it was intuitively obvious from the verdict form that attempt, as it applied to each of the listed crimes, applied to the crime described in the verdict form, and the jury was free to find petitioner guilty of attempted first or second degree murder, or attempted manslaughter. "If jury instructions, viewed as a whole, fairly state the applicable law to the jury, the failure to give particular instructions will not be error." *Chesnoff v. State*, 840 So.2d 423, 426 (Fla. 5th DCA 2003).  If there was any confusion in the instruction because the parentheses describing the crime were not filled in, a contention this court does not accept, any possible confusion was cured by the court's reading of the verdict form, and by the clear language in the verdict form itself.

As the foregoing demonstrates, appellate counsel's failure to raise the jury instruction issue on appeal was not constitutionally deficient, because it was based on the reasonable conclusion that the appellate court would not hear the issue on the merits.  Moreover, petitioner cannot establish prejudice as a result of counsel's omission, because there is no reasonable probability that had appellate counsel

raised the jury instruction issue, the result of the appeal would have been different. The state court's denial of relief on this claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

    4.    <u>Ineffective assistance of appellate counsel - failure to appeal incorrect jury instruction which relieved the state of its burden of proof.</u>

    This is a repetition of the third ground, discussed immediately above, with the added claim that the subject instruction relieved the state of its burden of proof.[11] The appellate court denied relief on the merits, as before. The same result obtains here. The instruction was not confusing, was not incomplete, and when taken as a part of the whole, was correct. It did not relieve the state of any burden. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

    5.    <u>Ineffective assistance of trial counsel - failure to present a voluntary intoxication defense.</u>

    Finally, petitioner contends that he was intoxicated at the time of the crime, and that his attorney knew he was intoxicated yet failed to present a voluntary intoxication defense, which was still available in Florida at the time. He further contends that it was error for the state court to deny his motion for post-conviction relief as to this ground without affording him an evidentiary hearing.

<u>State Court Decision</u>

    This claim was presented to the trial court in petitioner's Rule 3.850 motion. The motion was denied without a hearing. The Rule 3.850 court, applying *Strickland*,

---

    [11]As with the third ground for relief, petitioner's claim is set out in his state habeas petition (ex. U).

held as follows:

> **Trial counsel . . . made a strategic decision not to pursue this defense. At trial, defense counsel said that he had spoken with the Defendant regarding a voluntary intoxication instruction. After considering the matter, defense counsel and the Defendant specifically agreed not to seek an instruction on voluntary intoxication. The court finds that defense counsel was not ineffective for not raising the defense of voluntary intoxication when the Defendant agreed with that strategy. Such a decision, in light of the Defendant's own statements regarding his mental state at the time of the shooting, was reasonable and will not be second guessed by this court.**

**(Ex. P, p.44-45) (footnotes omitted).[12]   Thus, the Rule 3.850 court, based on the record, made two basic findings - that the decision not to use a voluntary intoxication defense was a strategic one with which petitioner agreed, and based on petitioner's statements to the detectives, the strategic decision was sound.**

**Federal Review of State Court Decision**

**A.     Petitioner's varying stories are not of probative evidentiary value.**

**Petitioner now tells this court that on the night of the murder he was on an "all night drinking binge where he used drugs (marijuana), and drank alcohol excessively for over a 8 hour period [sic]." (Doc. 47, p. 10). The following morning he talked to the detectives and ultimately confessed (*id*.). He says his lawyer knew of this, but refused to present an involuntary intoxication defense because "that's the coward's way out, I really don't like that defense." (*Id*.).**

**During his recorded interview with the detectives, petitioner made the following statements:**

> -    **He drank a 32 ounce beer, only, the night of the shooting. This was his first time ever drinking, and it made him feel lazy, dizzy. (Ex. F, pp. 467-469).**

> -    **He was drunk, but not "drunk drunk." He still had his right mind and**

---

**[12]The court's footnotes referred to attached copies of parts of the transcripts, as required by Rule 3.850(d).**

everything.  He was not one who would go out and get high, out of his
mind.  (*Id*. at 473 -474).

- He was "a little" drunk.  Drunk enough to stumble a little bit, to be
feeling good.  "I wasn't drunk out of my mind and everything, but I was
still - - wasn't fully in my right mind."  He did not take any drugs that
night.  (*Id*. at 495-96).

What petitioner told the officers is completely at odds with what he is now
telling this court - one 32 oz. beer *or* an eight hour alcohol and marijuana binge -
and this ground should be rejected for that reason alone.  This court will not
"'blindly accept speculative and inconcrete claims . . . .'"  *Raulerson v. Wainwright*,
753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653f2d942, 947 (5th
Cir. 1981)).  Absent evidence in the record, a court cannot consider a habeas
petitioner's bald assertions on a critical issue in his *pro se* petition (in state and
federal court), unsupported and unsupportable by anything else contained in the
record, to be of probative evidentiary value.  *Woodard v. Beto*, 447 F.2d 103 (5th Cir.
1971).[13]  Thus, "mere conclusory allegations do not raise a constitutional issue in a
habeas proceeding.  *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980).

B.    Petitioner's waiver.

Beyond the fanciful self-serving portrait petitioner now presents, the trial
transcript shows clearly that petitioner discussed a voluntary intoxication defense
with his attorney, and both he and his attorney told the court that they were not
invoking that defense.  During the charge conference the prosecutor told the court
that petitioner's counsel had mentioned possibly asking for jury instructions on
"independent act" and voluntary intoxication.  In response to the court's inquiry,
counsel advised that he had discussed both instructions with petitioner "from a
strategy trial standpoint" but decided they would not be asking for those

---

[13]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to
September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206,
1207 (11th Cir.1981) (en banc).

instructions (ex. F, pp. 622-23).  Then:

> **THE COURT: Is that correct, Mr. Wright, you have discussed those matters with Mr. Flowers (defense counsel) and based on those discussions you agreed with his decision or you both jointly made a decision, I assume, to not request those instructions at this time, is that correct?**

> **MR. WRIGHT:       Yes, sir.**

(*Id.* at 623).  Now petitioner says the Rule 3.850 court should disregard this part of the record because his lawyer did not want to take the "coward's way out."  The time for petitioner to make that argument has passed.  If indeed counsel refused to invoke a voluntary intoxication defense against petitioner's wishes, as he now suggests, the time for him to have said so was at trial when the court gave him the opportunity to speak.  Petitioner made no such assertion to the trial court.  To the contrary, he told the court, without equivocation, that he agreed not to use a voluntary intoxication defense, and he told the detectives that he was "a little" drunk but "still had [his] right mind."  (Ex. F, pp. 473, 495).  *See Tafero v. Wainwright*, 796 F.2d 1314, 1320 (11th Cir. 1986) ("In this case, any inquiry into whether this closing argument amounted to ineffective assistance of counsel is rendered easy because Tafero agreed to this strategy.").

> C.   <u>Reasonableness of counsel's decision not to pursue voluntary intoxication defense.</u>

"Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component.  The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct.  By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact . . . ."  *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998); *Jackson v. Herring*, 42 F.3d 1350, 1357 (11th Cir. 1995).  Moreover, counsel's tactical decisions on which defense to pursue are

"virtually unchallengeable." *Provenzano*, 148 F.3d at 1332 (quoting *Strickland*)*; Waters v. Thomas,* 46 F.3d 1506, 1522 (11ᵗʰ Cir. 1995)); *cf. Miller v. Anderson*, 255 F.3d 455, 458 (7ᵗʰ Cir. 2001) (holding that the fact that something was a tactical decision does not immunize it from review under *Strickland*).  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation marks and citation omitted); see also *Waters v. Thomas*, 46 F.3d at 1518-19 (observing that "[w]e cannot, and will not, second guess" the "strategic decisions trial counsel are called upon to make"). "[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy." *Johnson v. Alabama,* 256 F.3d 1156, 1176 (11ᵗʰ Cir. 2001).

After all, "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065; *accord, e.g., Waters v. Thomas*, 46 F.3d at 1522 ("Three different defense attorneys might have defended Waters three different ways, and all of them might have defended him differently from the way the members of this Court would have, but it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance.").

In fact, "a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course." *Rogers v. Zant*, 13 F.3d at 387.  Accordingly, counsel's decision to curtail investigative efforts is also presumed reasonable, and the exclusion of other viable defenses does not establish ineffective assistance unless it is demonstrated that the course counsel actually chose was itself unreasonable. *Chandler*, 218 F.3d at 1318.

The Rule 3.850 court's finding that counsel made a strategic decision not to use a voluntary intoxication defense was fully supported by the record, and this court defers to that finding.  This court further finds that the strategic decision was sound was because the defense was a loser.   Under Florida law, a voluntary intoxication defense requires proof that at the time of the offense the defendant was so intoxicated that he was unable to form the specific intent to commit the crime. *Rivera v. State*, 717 So.2d 477 (Fla. 1998).   Petitioner was found guilty of felony murder based on the underlying felony of robbery, a specific intent crime.  *Linehan v. State*, 476 So.2d 1262 (Fla. 1985).   Petitioner told the investigators that he and Duriel Jacobs conspired in the restroom of the convenience store to rob Mr. Waggoner, who was looking for drugs and therefore had money on his person. Specific intent was thus proven by petitioner's own statement.   Moreover, a voluntary intoxication defense would have required petitioner to testify to his drinking and drug binge, otherwise he could not have proven it.  His eight-hour-alcohol-and-marijuana testimony would have quickly unraveled when cross-examined by the state based on what he had told the detectives.  And since his defense would have turned on his alleged lack of intent, the state would have been able to cross-examine him on his entire involvement in the crime.  Nothing good could possibly have come from petitioner testifying.  No reasonable juror would have acquitted petitioner based on voluntary intoxication under these circumstances.

   D.   <u>Necessity for a Rule 3.850 evidentiary hearing.</u>

   Petitioner complains that he was entitled to an evidentiary hearing in state court so he could tell the Rule 3.850 court about how intoxicated he was and what his lawyer said about the voluntary intoxication defense being the "coward's way out."  This claim is not cognizable on federal habeas review.  It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state post-conviction proceedings.  This is so, because such a claim represents an attack on a proceeding

collateral to the prisoner's confinement and not the confinement itself.  *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (habeas petitioner's claim that errors in Rule 3.850 proceeding violated his right to due process did not state a basis for habeas relief because the claim "[went] to issues unrelated to the cause of petitioner's detention.").  Because this claim  does not represent a constitutional challenge to petitioner's confinement, it does not constitute grounds for habeas relief.

Even if the claim was cognizable on federal habeas, it is without  merit.  Rule 3.850 provides that if the record conclusively shows that the movant is entitled to no relief, the motion should be denied without a hearing, and the court must attach to its order relevant pages from the record.  That is exactly what the Rule 3.850 court did, and based on the matters quoted above, it is abundantly clear that the record refuted petitioner's claim conclusively.  He was not entitled to a hearing.

The state court's denial of relief on petitioner's ineffective assistance claim did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Walter A. McNeil has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

That the second amended petition for writ of habeas corpus (doc. 32), challenging the conviction and sentence in the case of *State of Florida v. Duante Wright*, in the Circuit Court of Okaloosa County, Florida, case no. 99-531, be DENIED,

and that this cause be DISMISSED and the clerk be directed to close the file.

At Pensacola, Florida this 14th day of November, 2008.

/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).